**RECEIVED**
IN LAKE CHARLES, LA.

**NOV 29 2010**

TONY R. MOORE, CLERK
BY_____
　　　　DEPUTY

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MICHAEL H. BERCIER** | : | **DOCKET NO. 2:09 CV 1794** |
| **VS.** | : | **JUDGE MINALDI** |
| **DALE BARTON BERNARD,** | : | **MAGISTRATE JUDGE KAY** |
| **BERNARD INSURANCE AGENCY,** | | |
| **INC., AND STATE FARM FIRE AND** | | |
| **CASUALTY INSURANCE COMPANY** | | |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by the defendant, State Farm Fire & Casualty Co. ("State Farm Flood"), in its capacity as flood insurer [Doc. 21]. The plaintiff, Michael H. Bercier, filed a deficient Response [Doc. 42].

### FACTS

On or about September 13, 2008, Hurricane Ike damaged property located at 132 Cedar Street in Cameron, Louisiana. The plaintiff owns the property. At the time of Hurricane Ike, the plaintiff's home was allegedly near re-completion from damages it sustained when Hurricane Rita struck the Gulf Coast. State Farm Flood, as a "Write Your Own" ("WYO") program carrier with the federally funded National Flood Insurance Program ("NFIP") issued a Standard Flood Insurance Policy ("SFIP") on the property. The SFIP coverage included $250,000 for the structure and $100,000 for contents of the property. The plaintiff procured his flood insurance through Dale Barton Bernard at the Dale Bernard Insurance Agency.[1]

---

[1] Def.'s Statement of Undisputed Facts ¶¶ 1-3 [Doc. 21-9]; Compl. ¶ 7 [Doc. 12].

1

Congress created the NFIP to provide flood insurance coverage at or below actuarial rates. *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). The Federal Emergency Management Agency ("FEMA") operates the NFIP, and the program is supported by the federal treasury. *Id.* The NFIP grants FEMA the power to issue SFIPs directly or through WYO companies. *Id.* FEMA provides regulations to determine "which federal flood insurance funds may be disbursed to eligible policy holders," and sets the terms and conditions of these policies. *Id.*; 44 C.F.R. § 61, app. (A)(1), art. VII.R. Pursuant to federal statute, WYO insurance companies are fiscal agents of the United States. 42 U.S.C. § 4071(a)(1) (2006).

After Hurricane Ike damaged his property, the plaintiff reported the flood damage to State Farm Flood, who sent an adjuster to inspect the property on September 24 and 26, 2008. After the inspections, State Farm Flood received what appeared to be an estimate from the plaintiff for flood damages to the property. The estimate totaled $464,379.60. Less than two weeks after receiving this estimate, State Farm Flood again sent an adjuster to inspect the plaintiff's property.[2]

As required by Federal Regulation, the plaintiff executed a sworn proof of loss on October 21, 2008. The proof of loss, however, contained a number of errors, and State Farm Flood rejected it.[3] On November 2, 2008, the plaintiff executed another proof of loss, which requested $425,000 from State Farm Flood for flood damages. In addition to requesting $75,000 more than the policies coverage amount, the second proof of loss contained a number of

---

[2] Def.'s Statement of Undisputed Facts ¶¶ 3-7 [Doc. 21-9].

[3] Def.'s Statement of Undisputed Facts ¶¶ 8-9 [Doc. 21-9]; Aff. Grover Gail Brashier ¶ 17 & Ex. B, Proof of Loss [Docs. 21-2 & 21-4].

additional errors.[4]  Despite these errors, State Farm Flood accepted the proof of loss in form only.[5]

On November 21, 2008, State Farm Flood provided payment to the insured for $202,593.78 for building coverage.[6]  Less than one month later, it issued a letter denying most of the nearly $140,000 in contents coverage that the plaintiff requested.  According to State Farm Flood, a number of the items claimed were building items, not personal property.  In addition, some of the items claimed allegedly lacked either the specificity to determine coverage or were not observed to have been at the loss location during the initial inspection.  Accordingly, it provided payment of $10,158.15.[7]  Dissatisfied with State Farm Flood's compensation, the plaintiff filed this lawsuit.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment

---

[4] Aff. Grover Gail Brashier ¶ 19 & Ex. D, Proof of Loss [Docs. 21-2 & 21-6].  Among others, the total insurance coverage was, at least, $1,582,000, not the $1,432,000 provided on the Proof of Loss. The applicable depreciation, moreover, was $0 (as purported by the Proof of Loss statement: "Just Rebuilt"), not the $1,173,000 provided in the Proof of Loss.  Similarly, the amount of the deductible was $1,000, not the $1,173,000 provided in the Proof of Loss.  *Id.*

[5] Ex. E-1, State Farm Letter [Doc. 21-7].

[6] Aff. Grover Gail Brashier ¶ 20 [Doc. 21-2].

[7] Ex. E-1, State Farm Letter [Doc. 21-7]

3

by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex,* 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Id.*

## LAW AND ANALYSIS

The plaintiff seeks additional insurance proceeds from State Farm Flood for the damages it allegedly incurred from flooding during Hurricane Ike. He also seeks damages, penalties, and reasonable attorney's fees against State Farm Flood under Louisiana Revised Statute 22:658 and 22:120 as well as "interest on all judgments." [8]

---

[8] Compl. ¶ 27. While the plaintiff actually seeks a judgment against State Farm Flood for all losses to buildings, contents, and damages incurred and not paid, regardless of cause, the affidavits and Federal Regulation clearly demonstrate that the maximum amount of liability is the coverage limits of State Farm Flood's insurance policy. *Id.*

4

State Farm Flood, however, asserts three applicable arguments in support of its summary judgment motion.[9]  First, it argues that the plaintiff's claims should be dismissed because the "[p]laintiff did not comply with all conditions precedent under the SFIP; namely, [the plaintiff] failed to sufficiently document his claim as required by Article VII(J)(3) of the SFIP."[10]  Thus, the plaintiff did not comply with the conditions required to file a lawsuit seeking proceeds under an SFIP as prescribed in Article VII(R).

Second, State Farm Flood contends that all state-law extra-contractual and tort claims regarding claims handling are preempted by federal law.  Finally, State Farm Flood claims that the plaintiff's request for insurance should be dismissed because "[i]nterest is not allowed in claims arising [under the NFIP]."

### 1.  Conditions Precedent: Description of Loss

According to regulation, no provision of an SFIP may be altered, varied, or waived without the express written consent of the Federal Insurance Administrator.  44 C.F.R. § 61, app. A(2), art VII.D.  Under the NFIP, an insured cannot file a lawsuit seeking further federal benefits under the policy unless the insured can show prior compliance with all policy requirements.  44

---

[9] State Farm Flood further argues that, to the extent the plaintiff has already repaired his property, the estimate the plaintiff provided to document the flood loss is irrelevant. Specifically, the plaintiff is limited to recover the amount actually spent to repair or replace the damaged portion of the property.  This argument, contained within its argument that the estimate is insufficient to satisfy the SFIP requirements, is not applicable to State Farm Flood's Summary Judgment Motion.  State Farm Flood has provided no evidence implying that the plaintiff actually repaired his property after Hurricane Ike.  Def.'s Br. Summ. J. 6 [Doc. 21-1].

[10] Def.'s Br. Summ J. 7 [Doc. 21-1].  State Farm Flood also notes that the plaintiff failed to submit a proof of loss for the additional sums it requests; however, State Farm Flood appears to abandon this argument in its summary judgment motion.  Id.  Rightly so, the plaintiff submitted a proof of loss, requesting sums that exceed the flood policy limits.  Although the proof of loss was accepted in form only, State Farm does not challenge the sufficiency of the proof of loss. Thus, this argument is rejected.

5

C.F.R. § 61, app. (A)(1), art VII.R; *Marseilles Homeowners Condominium Assoc., Inc. v. Fidelity Nat'l. Ins. Co.*, 542 F.3d 1053, 1056 (5th Cir. 2008). Failure to comply with the regulation's requirements relieves the federal insurer's obligation to pay what otherwise might be a valid claim. *Id.*; *Gowland v. Aetna*, 143 F. 3d 951, 954 (5th Cir. 1998). This is a strict and often draconian requirement. *See, e.g., Santangelo v. State Farm Fire & Cas. Ins. Co.*, 2007 WL 1655549, at *5 (E.D.La. June 6, 2007) (denying plaintiffs' claims under SFIP because the insurer did not actually receive the policy renewal check within 30 days as required under the SFIP even though plaintiffs mailed policy renewal check within 30 days of policy expiration).

The federal regulation at issue states: "In case of flood loss to insured property, [the insured] must. . . [p]repare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents. . . ." 44 C.F.R. § 61, app. A(1), art. VII(J)(3). The insured is required to produce this or similar documentation again in his proof of loss under to Article VII(J)(4). *Id.* at art. VII(J)(4)(f) & (i). "While the documentation of an insured's detailed repair estimates most commonly takes the form of contractors' repair estimates, the insured must use its own judgment when furnishing the detailed repair estimates." *See id.* art. VII(J)(5); *see also Sun Ray Village Owners Assoc. v. Old Dominion Ins. Co.*, 546 F. Supp. 2d 1283, 1292 (N.D.Fl. 2008) (citing *Curole v. Louisiana Citizens Prop. Ins. Corp.*, Civ. A. No. 06-8539, 2007 WL 625933 (E.D.La. Feb. 23, 2007) (denying summary judgment when an issue of material fact existed as to whether photographs of the damaged property submitted by the insured were sufficient to show that the property was a total loss)). To comply with Article VII (J)(3), the insured must submit enough documentation to allow the insurer to evaluate the merits of the claim, including the estimated cost of repair. *See Forman v. FEMA*, 138 F.3d 543, 545 (5th Cir. 1998).

6

In *Paulsen v. State Farm Ins. Co.*, for example, the insured submitted an estimate prepared by a contractor, which contained "an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss." Civil Action No. 06-9546, 2008 WL 397772, at * 4 (E.D.La. Feb. 11, 2008). Although he did not attach all bills, receipts, and related documents, the court reasoned that the insured may not have had any of these items when he submitted the estimate. *Id.* In any event, the court noted that "the SFIP is not clear that an inventory of loss and bills and receipts have to be given to an insurer in order to adequately document the loss." *Id.* Thus, the court denied the insurance company's motion for summary judgment, finding that it had failed to meet its burden to demonstrate that the estimate was insufficient to meet SFIP requirements. *Id.*; *see also Oechsner v. Harford Fire Ins. Co.*, Civil Action No. 07-1436, 2008 WL 89514, at *3 (E.D.La. Jan. 7, 2008) (denying a motion for summary judgment because the written statement submitted by the plaintiff setting forth the basis of the loss along with supporting documentation, including contractor's estimates, "very well may have been sufficient to establish both the nature of the loss and the amount of the claim.").

Here, an issue of material fact exists over whether the estimate is sufficient to meet the regulatory requirement of Article VII (J)(3). The contractor's estimate, like the estimate in *Paulsen*, contains an estimate of the quantity, description, actual cash value, and amount of loss. 2008 WL 397772, at * 4. For instance, it contains the cost to replace twenty-seven windows, describing the type of window, quantity, cost of replacement, and thus the amount of loss. While the estimate does not contain bills, receipts, or related documents, "the SFIP is not clear that an inventory of loss and bills and receipts have to be given to an insurer in order to adequately

7

document the loss." *Id.* Therefore, the estimate may sufficiently comply with SFIP requirements.

State Farm also argues that the contents inventory contains a number of items "that are specifically excluded or are not considered 'contents' pursuant to the SFIP." The only documentation this Court possesses to consider the sufficiency of the contents inventory is State Farm Flood's content summary. While this document, at best, demonstrates that the plaintiff exhibited poor judgment when furnishing the detailed repair estimate, it does not reflect a failure to comply with the SFIP's disclosure requirement under Article VII (J)(3). Based on the evidence presented, State Farm has not met its initial burden; namely, to demonstrate that there is no genuine issue of material fact and State Farm is entitled to judgment as a matter of law.

**2. Preemption**

State Farm Flood also argues that all of the plaintiff's extra-contractual state law tort claims arising from claims handling are preempted by federal law. The Fifth Circuit has clearly held that "state law tort claims arising from claims handling by a WYO are preempted by federal law." *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 344 (5th Cir. 2005) (quoting *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005)). Thus, State Farm Flood is entitled to summary judgment with respect to the plaintiff's extra-contractual state law claims regarding claims handling.

Equally well-settled is that a plaintiff may not recover state law statutory penalties and attorney's fees in an action based upon a denial of coverage pursuant to an SFIP. *See, e.g., West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978). As stated by the Fifth Circuit, "a prevailing plaintiff in a suit on a flood insurance policy issued pursuant to the National Flood Insurance Act is not entitled to recover the statutory penalty and attorney's fees allowed by state insurance law

8

for arbitrary denial of coverage." *Id.* Accordingly, the plaintiff's state law claims seeking

penalties and attorney's fees pursuant to Louisiana law for the arbitrary and capricious denial of

coverage pursuant to the SFIP are barred.

### 3. **Legal Interest**

The plaintiff is also not entitled to judicial interest. The Fifth Circuit has described the

"no interest" rule "[a]s a general rule [where] the United States is not liable for interest unless the

liability is imposed by statute or assumed by contract." *In re Estate of Lee*, 812 F.2d 253, 255-56

(5th Cir. 1987). In *Estate of Lee* the Fifth Circuit ruled that an award of prejudgment interest in

lawsuits brought directly against FEMA are precluded by sovereign immunity. 812 F.2d at 255-

56. The court's holding reflected the structural change of the NFIP. *Id.* The Fifth Circuit

explained:

> Under the authority vested in the Secretary [of HUD] in "Part B" of the Act, 42
> U.S.C. §§ 4071-72, HUD took control of the program and assumed all operational
> responsibilities on January 1, 1978. Subsequently, the Director of FEMA took
> over HUD's duties under the flood insurance program. The Director of FEMA is
> required to "carry out the program of flood insurance authorized under [the Act]
> through the facilities of the Federal Government." *Id.* § 4071(a). In doing so,
> however, the Director is authorized to use either federal employees or insurance
> companies and brokers as "fiscal agents." *Id.* Under Part B, the Director of
> FEMA now adjusts and pays the claims. In sum, under the current Part B
> program, FEMA has assumed the responsibilities that the Association formerly
> executed under Part A. We hold, therefore, that because of the government's
> increased role in the operation of the NFIP, a suit against the Director of FEMA
> for recovery on a national flood insurance policy issued under Part B of the Act is
> now a suit against the federal government. *Kolner v. Director, Fed. Emer.
> Management*, 547 F.Supp. 828, 830 (N.D.Ill.1982).

*Id.* The court held that "[a]lthough it was appropriate to award interest on flood insurance

policies issued by the private insurers under Part A of the Act, such an award, which would now

be a direct charge on the public treasury, is no longer possible without express congressional

consent." *Id.* at 256. While the holding in *Estate of Lee* precludes interest judgments against

FEMA, the Fifth Circuit has not directly decided whether the *Estate of Lee* rule applies to lawsuits filed against WYO companies.

The Eleventh Circuit, however, has held that a prejudgment interest award against a WYO company is in fact a direct charge on the public treasury and is thus forbidden by the "no-interest" rule. *Newton v. Capital Assurance Co., Inc.*, 245 F.3d 1306, 1312 (11th Cir. 2001). Starting with an analysis of the Fifth Circuits holding in *Estate of Lee*, the Eleventh Circuit considered whether an interest award against a WYO company, as opposed to FEMA, would be a direct charge on the federal treasury. *Id.* Despite recognizing that a lawsuit against a WYO is not a lawsuit against the federal government, the Eleventh Circuit analyzed the financial relationship between WYO companies and FEMA established by agency regulation and found that "claim payments come out of FEMA's pocket regardless of how they are paid." *Id.* at 1311-12; *see also Gowland v. Aetna*, 143 F.3d 951, 954-55 (5th Cir. 1998) (noting that payments made pursuant to a SFIP are "a direct charge on the public treasury"). Because "the line between a WYO company and FEMA is too thin to matter for the purposes of federal immunities such as the no-interest rule," the Eleventh Circuit held that a plaintiff could not be awarded interest on any judgment. *Newton*, 245 F.3d at 1311.

Since the Fifth Circuit reasoned in *Estate of Lee* that an interest award against private insurers would now be a direct charge on the public treasury, congressional consent is required before the insured may recover interest on a judgment against a WYO company. 812 F.2d at 255-56. As such, the Eleventh Circuit's reasoning is compelling. An interest award with respect to the plaintiff's claim for denial of coverage by State Farm Flood is precluded by the no-interest rule because it is a direct charge on the federal treasury. *Newton*, 245 F.3d at 1311. Accordingly, it is

10

ORDERED that State Farm Flood's Motion for Summary Judgment is GRANTED in part and DENIED in part.  State Farm Flood has failed to meet its initial burden of proving that the plaintiff failed to sufficiently document his loss.  All extra-contractual claims against State Farm Flood, however, are DISMISSED WITH PREJUDICE, and the plaintiff's request for interest against State Farm Flood is DENIED, as a matter of law.

Lake Charles, Louisiana, this 29 day of _November_ 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

11